IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Cr. A. No. 06-28 |
| | ) | |
| v. | ) | |
| | ) | |
| LUKE GATLIN, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS**

Defendant, Luke Gatlin, by and through his undersigned counsel, Robert D. Goldberg, hereby moves for the suppression of all evidence obtained as a result of the unlawful search of his person on or about February 9, 2006 including the handgun seized from Mr. Gatlin and all of Mr. Gatlin's statements to law enforcement officers that the Government intends to introduce at trial. Defendant submits that he was stopped and searched by police officers in violation of his Fourth Amendment rights. In support of this Motion, the Defendant states as follows:

1. On February 9, 2006, Corporal Leary received a phone call from a past proven Confidential Informant. The Confidential Informant stated to him that a Black male subject known to him/her as "Luke" is in possession of a handgun and is standing in the gas station at 30th and Market Streets. The Confidential Informant then described the suspect and the clothing he was wearing. He also advised Corporal Leary that the suspect had the gun in his right front jacket pocket.

2. According to his police report, Corporal Leary then advised Detective Taylor of the foregoing information and was advised in turn by Detective Taylor that he (Det. Taylor) would advise WILCOM of the information. Next a call was received by WILCOM, presumably

from Detective Taylor. A transcript of that call to WILCOM is attached hereto as Exhibit A. The transcript is brief. In it someone, presumably Detective Taylor, states: "Do you have any cars available up North to [inaudible] a man with a gun?" He then goes on to describe the exact location, 30th and Market Streets, and a description of the man and clothing. The final entry is a dispatch from one of the units stating, "We're up North."

3.  According to Corporal Leary's report, the officers who responded were Detective Burch and Probation and Parole Officer Kananen.

4.  According to Officer Kananen's report, he and Detective Burch entered the parking lot at 30th and Market Street and observed a man fitting the description that had been broadcast. Thereafter, Detective Burch ordered the subject to the ground at gunpoint and Officer Kananen placed handcuffs on him for safety. Officer Kananen then patted him down and removed a silver handgun from Defendant's right front jacket pocket. Only after doing so did he recognized the subject as being Luke Gatlin who he knew to be under probation supervision.

5.  As shown by the above sequence of events, Corporal Leary was not notified of any crime in progress or contemplated. Instead, he was merely notified that a man fitting Defendant's description had a gun. He relayed the same information to Detective Taylor who in turn called Dispatch. Through Dispatch, Detective Burch learned the very same limited information, *i.e.,* that there was a man with a gun. From the beginning of this relay, not one person stated that the Defendant was engaged in or about to be engaged in any criminal activity.[1]

6.  In the instant case, no one ever articulated a crime or crimes that Defendant was either participating in or about to participate in. In fact, the officers who actually made the stop

---

[1] It should be noted that this is not a case involving 11 *Del. C.* §§1902 and 1903. There, an officer may stop any person abroad, or in a public place, who the officer has reasonable ground to suspect is committing, has committed or is about to commit a crime, and may demand the person's name, address, business abroad and destination. Under §1903, a police officer who has complied with §1902 may then search the person for a weapon.

2

were merely acting upon information received from a Confidential Informant and relayed to Corporal Leary who in turn relayed the information to Detective Taylor who in turn relayed it through WILCOM to Detective Burch. This hearsay, stacked upon hearsay, stacked upon hearsay hardly constitutes probable cause. Even if Corporal Leary may have had cause to order a stop and a search of Defendant – and there is no evidence that he did – the fact is that the officers who made the search and pat down had no information other than that the Defendant may have had a gun. Of course, possession of a weapon is legal under the Second Amendment of the United States Constitution and Article I, §20 of the Delaware Constitution and a stop based merely upon hearsay information certainly does not pass constitutional muster.

7. The standard for stop and search cases is set forth in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Terry,* the Court held that:

> [W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. Such *399 a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken.

*Terry v. Ohio,* 392 U.S. at 30-31, 88 S.Ct. at 1884-1885, 20 L.Ed.2d at 911.

8. Courts have held that although an investigative stop need not be supported by probable cause, it "…must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. " *United States v. Cortez,* 449 *U.S.* 411, 417, 101 *S.Ct.* 690, 694, 66 *L.Ed.*2d 621, 628 (1981). In the instant case, there is no evidence of unusual conduct by the Defendant. Unless he was being profiled, he was no different than any

3

other person abroad in the City. The officers who stopped him had no evidence that criminal activity was afoot or that defendant was <u>illegally</u> carrying a concealed firearm or contemplating some other crime. Certainly, the officers making the arrest must have such reasonable suspicions, not some officer somewhere else in the city or someone deep within the bowels of the police bureaucracy. In this case however, not even they had an articulable suspicion that Defendant was engaged in or about to engage in illegal conduct or that he was not license or otherwise permitted to carry a handgun. Accordingly, Defendant's arrest should be suppressed.

WHEREFORE, for the reasons stated herein and for such other reasons as shall appear to the Court, the Defendant requests that his Motion be granted, or in the alternative, he be granted a suppression hearing.

**BIGGS AND BATTAGLIA**

By: /s/ Robert D. Goldberg
Robert D. Goldberg (ID # 631)
Biggs and Battaglia
921 North Orange Street
P.O. Box 1489
Wilmington, DE 19899
(302) 655-9677
Attorney for Defendant

DATED: 6/16/2006

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Cr. A. No. 06-28 |
| | ) | |
| v. | ) | |
| | ) | |
| LUKE GATLIN, | ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER**

The Court, having considered Defendant's motion To Suppress Evidence And Statements, hereby orders on this _____ day of _____, 2006 that all evidence seized from Defendant and statements made by Defendant subsequent to his arrest on February 9, 2006 be suppressed.

IT IS SO ORDERED.

_____
J.

5

## CERTIFICATE OF SERVICE

      I, Robert D. Goldberg, undersigned counsel of record, hereby certify that on June 16, 2006, I caused a copy of the attached DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS to be served on the following in the manner indicated:

### VIA ELECTRONIC FILING

Richard G. Andrews, Esquire
U.S. Attorney's Office
1007 Orange Street, Suite 700
Wilmington, DE 19801

                                                /s/ Robert D. Goldberg
                                                Robert D. Goldberg (I.D. #631)

P:\Users\Meme\RDG\PLEADING\Gatlin 060206 motion.doc

?        :  418.
Dispatch: Go ahead..
?        : Do you have any cars available up North to [inaudible] a man with a gun?
Dispatch: Location/Description?
?        : That'd be 30th and Market. 30th and Market. It's a black male, about 5'8", light-complected, black khakis, that has a Chicago Cubs baseball hat. Should be right in the area of 30th and Market. The gun is in the right front coat pocket.
?        : 372, we're up North.