IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. 06-28-KAJ |
| | ) | |
| LUKE GATLIN, | ) | |
| | ) | |
| Defendant. | ) | |

## RESPONSE TO MOTION TO SUPPRESS EVIDENCE AND STATEMENTS

NOW COMES the United States of America, by and through Colm F. Connolly, United States Attorney for the District of Delaware, and Richard G. Andrews, Assistant United States Attorney, and submits the following response to Defendant's Motion. The government respectfully requests that the Court deny the Defendant's motion.

1.     Defendant moves to suppress evidence (namely, a handgun) seized from him on February 9, 2006, and subsequent statements also taken from him on that day. His motion states that he is relying upon the fourth amendment. Presumably, then, the only basis for suppressing the subsequent statements is as "fruit of the poisonous tree." If the gun is not suppressed, then there would be no basis for suppressing the statements. If the gun is suppressed, the Government would not be able to prosecute the case even if the statements were admissible. Thus, the Court does not need to consider the statements as an independent issue.[1]

---

[1] The undersigned has discussed this with defense counsel, and understands him to agree with this. Thus, the only suppression issue for the hearing scheduled on July 12 is the seizure of the gun.

2.    The factual basis for the motion is essentially undisputed, and can be easily summarized. Detective Leary received a tip from a past-proven reliable confidential informant that black male with a particular physical description, wearing particular clothing, including "a Chicago Cubs baseball hat," was at 30th & Market, and had a gun in his right front coat pocket. This information was called into Wilmington Police, and transmitted to another Wilmington officer, Detective Burch, who was paired with Probation Officer Kananan. Minutes later, Detective Burch and Officer Kananan saw a person (the defendant) matching this particularized description, at 30th & Market, stopped him, patted him down, and seized a gun from his right front coat pocket.

3.    The Defendant's fourth amendment argument appears to be based on two legal arguments, both of which are demonstrably incorrect.

4.    First, the Defendant says there was no basis for stopping the Defendant because possession of a gun is protected by the second amendment and the Delaware constitution, and the confidential informant alleged no crime by the Defendant. Neither the second amendment nor the Delaware constitution give people an absolute right to possess a firearm, and neither invalidates Delaware criminal law making possession of a gun illegal under certain circumstances. "[T]he Second Amendment furnishes no absolute right to firearms." *United States v. Rybar*, 103 F.3d 273, 286 (3d Cir. 1996). In an earlier decision, the Third Circuit held that "courts consistently have found no conflict between federal gun laws and the Second Amendment, narrowly construing the latter to guarantee the right to bear arms as a member of a militia." *United States v. Graves*, 554 F.2d 65, 66 (3d Cir. 1977). Furthermore, the Delaware Supreme Court has recognized that Delaware laws regulating firearms do not violate constitutional rights. The court held, "a rebuttable presumption exists that states statutes do not violate the constitution." *Short v. State*, 1990 WL 12101, at *1 (Del.

2

Supr. Jan. 14, 1991). Based on this reasoning, the Court held that Delaware's statute prohibiting possession of a firearm by a prohibited person was constitutional.

5.       The tip alleged a violation of Delaware law. One felony violation of Delaware law is "Carrying a Concealed Deadly Weapon." 11 Del. Code §1442. The informant's information made out a violation of that crime: "The gun is in the right front coat pocket." Radio Transmission (attached to Defendant's Motion). Defendant points out that there was no information that the Defendant did not have a license to carry a concealed deadly weapon. However, proving a defendant did not have a license to carry a concealed deadly weapon is not an element of the offense, and it is not the State's burden to prove the lack of a license. Possessing a license to carry a concealed deadly weapon is an affirmative defense to the charge of carrying a concealed deadly weapon. Delaware's Supreme Court recently reconfirmed the holding in *Lively v. State*, 427 A.2d 882 (Del. Supr. 1981), in which the Court stated, "possession of a license is best viewed as a defense to a charge of CCDW, since it is a matter more immediately within the knowledge of the defendant himself, and more readily proven by him." *Smith v. State of Delaware*, 2005 WL 2149410, at * 2 (Del. Supr. Aug. 17, 2005).[2]

6.       Second, the Defendant says there is something wrong with the stop because the officers who made the stop and seizure may not have personally had any basis for believing the Defendant was committing a crime.[3] However, when an officer acts on information that has been

---

[2] Thus, *United States v. Ubiles*, 224 F.3d 213 (3d Cir. 2000), is not on point because the crime considered there was possession of an unregistered firearm. It would have been the government's burden to prove the lack of registration.

[3] Officer Kananan appears to have recognized the defendant, whom he had previously supervised on house arrest, almost immediately, and knew that he was on probation. Probationers are generally not allowed to possess firearms as a condition of probation.

3

relayed from a different officer (even if there are multiple links in the relay chain), the legality of the police actions is based on the knowledge not just of the officer who acted, but also the officer who supplied the information that was the basis for acting. The Supreme Court held that "if a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a stop to check identification, . . . to pose questions to the person, or to detain the person briefly while attempting to obtain further information." *United States v. Hensley*, 469 U.S. 221, 232 (1985). In other words, the officer making the stop does not have to be able to justify the stop upon his own personal knowledge. It is sufficient if the police officers involved, as a whole, have a reasonable basis for restraining the defendant's liberty. There is little doubt that, in this case, they did.

WHEREFORE, the United States respectfully requests that the Motion to Suppress be denied.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

BY: Richard G. Andrews
First Assistant United States Attorney

Dated:  June 30, 2006

4

## CERTIFICATE OF SERVICE

I, Theresa A. Jordan, an employee with the United States Attorney's Office, hereby

certify that on June 30, 2006, I electronically filed the foregoing:

## RESPONSE TO MOTION TO SUPPRESS EVIDENCE AND STATEMENTS

with the Clerk of the Court using the CM/ECF which will send notification of such filing to:

> Robert D. Goldberg, Esq.
> Biggs & Battaglia
> 921 North Orange Street
> P.O. Box 1489
> Wilmington, DE 19899

Theresa A. Jordan