UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Action No. 06-28-KAJ |
| ) | |
| LUKE GATLIN, ) | |
| ) | |
| Defendant. ) | |

**MOTION IN LIMINE**
**REGARDING EVIDENTIARY ISSUES AT TRIAL**

NOW COMES the United States of America, and in connection with the trial of the above case, scheduled to begin September 12, 2006, hereby requests that the Court exclude any testimony as set forth below:

1.    The Defendant is charged with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

2.    The Defendant was arrested after a confidential informant provided information that the Defendant was carrying a firearm in his right coat pocket. The informant provided a specific description of the Defendant, his clothing, and location, which was 30th and Market Streets in Wilmington, Delaware.

3.    When the police arrived at 30th and Market they saw the Defendant talking with two women seated in a car parked outside a gas station/convenience store at that corner. The police searched the Defendant, recovered a gun from his right coat pocket, and arrested him.

4.    In a post-arrest videotaped statement, the Defendant described how he came to possess the gun. He said that he had been talking on the phone with his girl's mom (Tierra Morris) when he was

1

robbed at gunpoint on 26th Street, between West and Washington Streets (*i.e.*, about seven city blocks from where he was arrested). He said the robber took $125 and his cellphone. He then stated that he used a "phone booth" to call a person named "Skeebo," who met him at 28th and Market Streets (*i.e.*, two city blocks from where he was arrested), and provided him with a gun. The Defendant claimed that he then walked to 30th and Market Streets, made a phone call to Ms. Morris, and was arrested.

5.     The Defendant has proffered that he would state at trial that what he told the police was partially true, except that (1) he knew the person who robbed him by his street name of "Butter"; (2) when Butter robbed the Defendant of his money and cell phone, the Defendant managed to take Butter's gun from him; and (3) Skeebo being the source of the gun was a fiction. He would also state at trial that the men who robbed him were following him in a car and demanded that he give them his gun back. The defendant would maintain that he called Ms. Morris from a pay phone at 30th and Market prior to the arrival of the police.

6.     The government understands that the defendant intends to call a witness at trial, and that the defense would attempt to elicit testimony that this witness was both the individual who robbed the defendant and the informant who reported the defendant's possession of the firearm.

7.     The government interviewed this witness on August 31, 2006. Based on the interview, the government expects the witness would state that he has known the Defendant since 1997 or 1998. The witness would deny robbing the defendant, and would contend that he saw the Defendant standing by himself in the gas station/convenience store parking lot at 30th and Market Streets. The witness would relate that the Defendant claimed to have been robbed by two men and that the Defendant explained he had subsequently gotten a gun from his brother. The witness would then testify that the Defendant removed a gun from his coat pocket and showed it to him, and that the Defendant asked the witness to drive him around the neighborhood to look for the robbers, which

2

the witness declined to do. The witness would state that he left the scene shortly thereafter, prior to the arrival of the police.

8. Because the defendant is on notice that this witness will offer only inculpatory evidence, the government requests that this Court exclude impeachment evidence which would not otherwise be admissible on direct examination, including (1) whether the witness was the confidential informant; (2) the witness's criminal history; and (3) any prior statements made by the witness.

9. Rule 607 of the Federal Rules of Evidence provides: "The credibility of a witness may be attacked by any party, including the party calling him." While Federal Rule of Evidence 607 permits either party to impeach a witness, that rule is not without limitations. It is well established that witnesses may not be called for the purposes of circumventing the hearsay rule or any other rule of evidence by means of Rule 607. *See United States v. Sebetich,* 776 F.2d 412, 428-29 (3d Cir. 1985).

10. In *Sebetich,* two bank robbery defendants had evidence that another man, named Chester Sala, told people that he intended to commit the bank robberies for which the defendants were charged. The defendants sought to call a witness, Agnes Williams, to testify to Sala's statements, but the District Court refused to admit the testimony because it was hearsay. The defendants argued, in the alternative, that they should have been permitted to call Sala himself and, assuming that he denied making the statement, impeach his testimony through Williams, who would confirm that Sala indeed stated that he committed the robberies. Williams' testimony, although ostensibly introduced to impeach Sala's credibility, would serve to establish the defendants' substantive argument that Sala committed the bank robberies. The Third Circuit concluded that the defendants could not invoke "impeachment" and Rule 607 as a means of circumventing the hearsay rules, and thus prohibited the defendants from using Williams to elicit Sala's statements. 776 F.3d at 428-29. Other circuits have similarly stated that impeachment may not be employed as a "mere subterfuge to get before the jury

evidence not otherwise admissible." *See, e.g., United States v. Morlang*, 531 F.2d 183, 190 (4th Cir. 1975) (cited approvingly in *Sebetich*, 776 F.3d at 429).

11. In the vast majority of circuits, this analysis hinges on whether the party's "primary purpose" is subversion of Rule 607.[1] Courts have discerned a party's intent by looking at the knowledge of the party seeking to impeach, and by considering what the witness was expected to say, the degree of surprise, and the purpose of the impeachment evidence. *See United States v. Kane*, 944 F.2d 1406, 1411 (7th Cir. 1991) ("It is an abuse of Rule 607 for the prosecution to call a witness from which it expects no useful evidence 'just so it [can] introduce hearsay evidence against the defendant in the hope that the jury [will] miss the subtle distinction between impeachment and substantive evidence--or, if it [doesn't] miss it, [will] ignore it.'" (quoting *United States v. Webster*, 734 F.2d 1191, 1192 (7th Cir.1984)); *United States v. Peterman*, 841 F.2d 1474, 1479-80 (10th Cir. 1988) ("The decisive issue for us is what the [party seeking to impeach] expected the witness to say."); *United States v. Johnson*, 802 F.2d 1459, 1466 (D.C. Cir. 1986) (holding that "it was entirely inappropriate" for a party to call a witness knowing he would provide only unfavorable testimony because such a witness would be called "not for any testimony he could be expected to give, but for the sole purpose of bringing about the admission of a post-arrest statement that . . . was not independently admissible").[2]

---

[1] The Third Circuit has cited cases from these circuits with approval, but has not had occasion to elaborate on the appropriate analytical framework in this context.

[2] The Eighth Circuit has disavowed any reliance on the state of mind of the party calling the witness to be impeached and has instead analyzed the admissibility of the impeachment testimony under the balancing test set forth in Federal Rule of Evidence 403. *See United States v. Logan*, 121 F.3d 1172 (8th Cir. 1997). Whether this Court analyzes the abuse of impeachment evidence under Rule 607 directly or under the balancing test set forth in Rule 403, the result should be the same — exclusion of impeachment evidence that is introduced merely to subvert the rules of evidence and the policies in favor of protection of confidential informant status.

12. In this case, the Defendant is on notice that the witness will provide exclusively inculpatory evidence. As a result, it is evident that if the defense continues with its plan to call the witness, it does so not to elicit his direct testimony, but solely for the purpose of impeaching him with otherwise inadmissible evidence. The Defendant therefore should not be permitted to use Rule 607 as a means of investigating whether the witness is the confidential informant, to bring out his criminal history, or to circumvent the hearsay rules by introducing any prior inconsistent statements because, for the reasons that follow, none of this evidence would be admissible as a matter of substantive evidence in the defendant's case.

**Testimony Regarding Whether the Witness is a Confidential Informant**

13. The burden is on the defendant to show the need for the disclosure of confidential informant information. *United States v. Jiles*, 658 F.2d 194, 197 (3d Cir. 1981).

14. The Supreme Court held in *Roviaro v. United States*, 353 U.S. 53 (1957), that courts should balance the public interest in encouraging and protecting informants against the defendant's need for informant identity information to determine whether confidential informant information should be disclosed. *Id.* at 59-61. In *Jiles*, the Third Circuit required the defendant to first "set[] forth a specific need for disclosure" that shows the confidential informant information "is relevant and helpful to the defense of an accused, or is *essential* to a fair determination of a cause" before finding that "the privilege must give way." 658 F.2d at 196 (emphasis added); see also *United States v. Brenneman*, 455 F.2d 809, 811 (3d Cir. 1972) (refusing to disclose an informant's identity where it would "not have been helpful to the defense" was not "essential to the fair determination of this cause.").

15. This witness's status as a confidential informant is completely irrelevant to the three elements of the government's case — that the defendant was a convicted felon who possessed a firearm that had previously traveled in interstate commerce. Even if the Defendant's allegation that the informant, or the informant's partner, robbed him seven blocks from 30th and Market were true,

those facts do not negate any of the three elements of the charged offense. Whether the witness is or is not a confidential informant thus has no relevance to the government's case in chief.

16. Whether the witness is the confidential informant is also irrelevant to any justification defense, because the identity of the confidential informant neither supports nor refutes the elements of the justification defense. The elements of the justification defense are: (1) that the defendant reasonably believed there was an unlawful and imminent threat of death or serious bodily injury to himself or to another person; (2) that the defendant did not recklessly or negligently place himself in a situation where he would be forced to engage in the criminal conduct; (3) that the defendant had no reasonable legal alternative to engaging in the criminal conduct; (4) that the defendant reasonably believed his criminal conduct would avoid the threatened harm, such that there was a direct causal connection between the criminal action and the avoidance of the threatened harm; and (5) that the defendant possess the firearm no longer than absolutely necessary to avoid the threatened harm. *See United States v. Paolello,* 951 F.2d 537, 541 (3d Cir. 1991).

17. The relevance of the confidential informant's identity to the defendant's guilt or innocence or to any legally cognizable defense is tenuous at best. It would therefore be impermissible, under test set forth in *Roviaro* and *Jiles*, to introduce evidence as a substantive matter regarding whether the witness is or is not a confidential informant.

18. Because it would be impermissible to admit evidence disclosing confidential informant identity as a substantive matter, and because the defendant has no legitimate purpose for eliciting such evidence directly, the defendant should not be permitted to subvert the substantive policy against disclosure of confidential informant identity by using the impeachment rules to ask the witness whether he is a confidential informant.

**Hearsay Statements and Prior Bad Acts Evidence**

19.     The government is not aware of the witness making any prior statements inconsistent with his expected testimony. Should there be any, they would normally be inadmissible hearsay as a matter of substantive evidence unless those statements were given under oath at another trial, hearing or proceeding, or unless such statements fell under another exception to the hearsay rules. *See* Fed. R. Evid. 801(d)(1).

20.     Similarly, evidence of the witness's prior criminal history would not normally be admissible as substantive evidence of his character except for impeachment purposes. *See* Fed. R. Evid. 608, 609.

21.     Because evidence relating to the witness's prior inconsistent statements and prior criminal history would not be admissible as a substantive matter, for the reasons set forth above, the government requests that the defendant be barred from using such information to impeach the witness.

Wherefore, the United States of America respectfully requests that the Court enter an order, in the form attached, before the start of trial.

>                Respectfully submitted,
>
>                COLM F. CONNOLLY
>                United States Attorney
>
>                By: /s/
>                Richard G. Andrews
>                Ilana H. Eisenstein
>                Assistant United States Attorneys

Dated: September 1, 2006

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Criminal Action No. 06-28-KAJ |
| | ) |
| LUKE GATLIN, | ) |
| | ) |
| Defendant. | ) |

**ORDER REGARDING ADMISSIBILITY OF TESTIMONY**

Now therefore, this __ day of September 2006, after consideration of the Government's Motion in Limine, and after having heard argument from the parties,

IT IS HEREBY ORDERED THAT:

Questioning relating to whether the witness is or is not the confidential informant is prohibited;

Evidence relating to prior inconsistent statements made by the witness are hereby excluded from trial; and

Evidence relating to the witness's criminal record is hereby excluded from trial.

Should circumstances arise during the presentation of evidence that either party believes opens the door to some or all of the above evidence, the party may seek reconsideration of these rulings outside the presence of the jury.

_____
Honorable Kent A. Jordan
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| v. | : Criminal Action No. 06-28-KAJ |
| LUKE GATLIN, | : |
| Defendant. | : |

## CERTIFICATE OF SERVICE

I, Jennifer Brown, an employee in the Office of the United States Attorney, hereby certify under penalty of perjury that on September 6, 2006, I electronically filed:

## MOTION IN LIMINE
## REGARDING EVIDENTIARY ISSUES AT TRIAL

with the Clerk of Court using CM/ECF. Said document is available for viewing and downloading from CM/ECF, which will send notification of such filing(s) to the following:

Robert D. Goldberg, Esquire
Biggs and Battaglia
921 N. Orange Street
Wilmington, DE 19899

/s/ Jennifer Brown
Jennifer Brown